# EXHIBIT B

**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan (SBN 348491)
*valter@malkpogolaw.com*
Erik Pogosyan (SBN 345650)
*erik@malkpogolaw.com*
1241 S Glendale Ave, Ste. 204
Glendale, CA 91205
Tel: (818) 484-5204
Fax: (818) 824-5144

*Counsel for Plaintiff and the Proposed Class*

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/29/2025 4:38 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Gnade, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| RICARDO SALAS, individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>  vs.<br><br>APPLE, INC.<br><br>                  Defendant. | Case No.   25STCV15685<br><br>**CLASS ACTION COMPLAINT**<br><br>  1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)<br>  2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)<br>  3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)<br>  4. FRAUD<br>  5. NEGLIGENT MISREPRESENTATION<br>  6. BREACH OF CONTRACT<br>  7. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY<br>  8. QUASI-CONTRACT / UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

1
CLASS ACTION COMPLAINT

Plaintiff Ricardo Salas ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Action against Apple, Inc. ("Apple" or "Defendant"). Plaintiff's allegations are based upon personal knowledge as to his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes substantial additional evidentiary support will exist for the allegations set forth below, after a reasonable opportunity for discovery.

## I.   **INTRODUCTION**

1.   Last summer, Apple launched a pervasive marketing campaign across all media platforms to promote its latest iPhone 16 model, spotlighting what it branded as the groundbreaking "Apple Intelligence" suite of features, including significant AI-driven enhancements to Siri.

2.   For months, the trillion-dollar tech giant touted these AI capabilities as the cornerstone of the new iPhone's appeal, promising consumers a product that would redefine smartphone use in the new AI economy.

3.   Apple's advertisements saturated the internet, television, and other airwaves to cultivate a clear and reasonable consumer expectation that these transformative features would be available upon the iPhone's release.

4.   This drove unprecedented excitement in the market, even for Apple, as the company knew it would, and as part of Apple's ongoing effort to convince consumers to upgrade at a premium price and to distinguish itself from competitors deemed to be winning the AI-arms race.

5.   But Apple also knew none of it was true. Recently, under mounting pressure from outraged consumers and industry scrutiny, Apple was forced to acknowledge that the heralded Apple Intelligence features, including the Siri enhancements that fueled the greatest consumer excitement, did not exist then and do not exist now.

6.   Worse, Apple has admitted that if these features ever materialize, it won't be until 2026—two years after its pervasive marketing campaign built on a lie.

7.   Against this backdrop, Apple deceived millions of consumers into purchasing new phones they did not need based on features that do not exist, in violation of multiple false advertising

CLASS ACTION COMPLAINT

and consumer protection laws. Defendant advertised that these products would be equipped with specific "Apple Intelligence" features ("Apple Intelligence") even though they were not.

8. This putative class action therefore seeks injunctive relief to ensure Apple permanently ceases its deceptive conduct, together with monetary damages to recover the unlawful price premium that millions of consumers paid for Apple's mirage of innovation.

9. Plaintiff Mr. Salas is one of those consumers, and brings this lawsuit on behalf of himself and all similarly situated purchasers ("Class Members") of the Apple iPhone 16 generation and other products Defendant advertised would be equipped with Apple Intelligence features (the "Products").

10. Prior to 2024, Apple knew its customer base was increasingly interested in generative AI features. To substantially increase sales of the upcoming iPhone 16 series, Apple announced at the annual Worldwide Developer Conference ("WWDC") on June 10, 2024, a release of its own artificial intelligence model, "Apple Intelligence."[1]

11. Apple promoted Apple Intelligence as a grouping of Generative AI tools on its upcoming lineup of iPhones and other devices. Defendant Apple indicated that the Apple iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro and iPhone 16 Pro Max, along with certain other Apple products, would come enabled with Apple Intelligence, and the improved capabilities present in those features ("Challenged Representations").

12. As has been revealed, however, Apple knew at the time of making its false promises that these features did not exist, but were instead still in early development (at best) and thus would not be included with the newly released iPhones.

13. Apple's fraud on the market began in approximately mid-2024, when it first launched marketing for the new iPhone Products. Its false campaign persisted for months prior to, and after, the new iPhone 16 release across all media. The Challenged Representations conveyed that the

---

[1] Samantha Kelly, *Apple Introduces AI to its products at WWDC*, CNN, (June 10, 2024) https://www.cnn.com/business/live-news/apple-wwdc-keynote-06-10-24/index.html#:~:text=Apple%20introduced%20%E2%80%9CApple%20Intelligence%E2%80%9D%20%E2%80%93,host%20of%20Apple%20product%20updates.

3

Products would be equipped with specific artificial intelligence features under the "Apple Intelligence" umbrella. These representations include but are not limited to:

    a)   "With Apple Intelligence, Siri can draw on a user's personal context to answer questions."[2]

    b)   "Siri will be able to deliver intelligence that's tailored to the user and their on-device information. For example, a user can say, 'Play that podcast that Jamie recommended,' and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email. Or they could ask, 'When is Mom's flight landing?' and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time."[3]

    c)   "With Apple Intelligence, Siri will be able to take hundreds of new actions in and across Apple and third-party apps. For example, a user could say, 'Bring up that article about cicadas from my Reading List,' or 'Send the photos from the barbecue on Saturday to Malia,' and Siri will take care of it."[4]

    d)   "Apple introduced the new iPhone 16 lineup, built from the ground up for Apple Intelligence and featuring the faster, more efficient A18 and A18 Pro chips — making these the most advanced and capable iPhone models ever."[5]

    e)   That Siri would be able to obtain and provide information to the user based on integration of all apps on the iPhone, for example, being able to search, via

---

[2] Apple Newsroom, *Apple Intelligence is available today on iPhone, iPad, and Mac*, APPLE (October 28, 2024) https://www.apple.com/newsroom/2024/10/apple-intelligence-is-available-today-on-iphone-ipad-and-mac

[3] Apple Newsroom, *Introducing Apple Intelligence, the personal intelligence system that puts powerful generative models at the core of iPhone, iPad and Mac*, APPLE (June 10, 2024) https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/.

[4] *Id.*

[5] Apple Newsroom, *Apple Intelligence Comes to iPhone, iPad, and Mac Starting Next Month*, APPLE (Sept. 9, 2024) https://www.apple.com/newsroom/2024/09/apple-intelligence-comes-to-iphone-ipad-and-mac-starting-next-month/.

4

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

voice command, the name of an individual the user met several months ago at a specific location.[6]

14.    The Challenged Representations were widely and prominently dispersed throughout Defendant's official website, social media, regularly-aired television advertisements, and Defendant's authorized retail vendors. Apple's falsehoods were viewed widely by the Public, as Apple intended, including because the company elected to run the deceptive campaign during the baseball playoffs and NFL season when it knew millions of viewers across California would be an especially captive audience for its fraudulent advertising.

15.    On April 22, 2025, the Better Business Bureau's National Advertising Division ("NAD") issued a recommendation that "Apple Discontinue or Modify Availability Claims for Certain Apple Intelligence AI Features."[7] The NAD had launched an inquiry into Apple Intelligence after receiving complaints that Apple had been promoting features in its products that did not exist.[8] The NAD noted that the inquiry focused on "express and implied claims made on the Apple Intelligence webpage and in promotional materials for the iPhone 16 and iPhone 16 Pro that conveyed the availability of certain Apple Intelligence features, including Priority Notifications, Image Generation tools (Image Playground, Genmoji, and Image Wand), ChatGPT integration into Siri and Writing Tools, and new Siri capabilities."[9]

---

[6] Omar Sohail, *Apple Intelligence Ad Showing New Siri Has Been Removed*, WCCFTECH (Mar. 8, 2025) https://wccftech.com/apple-intelligence-ad-showing-new-siri-has-been-removed/.

[7] *National Advertising Division Recommends Apple Discontinue or Modify Availability Claims for Certain Apple Intelligence AI Features*, BETTER BUSINESS BUREAU (April 22, 2025), https://bbbprograms.org/media/newsroom/decisions/apple-intelligence#:~:text=National%20Advertising%20Division%20Recommends%20Apple%20Discontinue%20or,National%20Advertising%20Division%20recommended%20that%20Apple%20Inc.

[8] Amber Neely, *NAD told Apple to modify or discontinue certain Apple Intelligence feature claims*, APPLE INSIDER (Apr 22, 2025), https://appleinsider.com/articles/25/04/22/bbb-told-apple-to-modify-or-discontinue-certain-apple-intelligence-feature-claims.

[9] *National Advertising Division Recommends Apple Discontinue or Modify Availability Claims for Certain Apple Intelligence AI Features*, BETTER BUSINESS BUREAU (April 22, 2025), https://bbbprograms.org/media/newsroom/decisions/apple-intelligence#:~:text=National%20Advertising%20Division%20Recommends%20Apple%20Discontinue%20or,National%20Advertising%20Division%20recommended%20that%20Apple%20Inc.

5

16.    As the Better Business Bureau NAD explained, Apple's claims that these AI features were "Available Now" were misleading and not properly supported when made:

"NAD found that Apple's unqualified "Available Now" claim, positioned at the top of its Apple Intelligence webpage and above detailed feature descriptions, reasonably conveyed the message that all listed features—including Priority Notifications, Image Playground, Genmoji, Image Wand, and ChatGPT integration—were available at the launch of the iPhone 16 and iPhone 16 Pro.

Although Apple launched these features in staggered software updates between October 2024 and March 2025, **NAD found that these claims were not properly supported at the time they were first made.** NAD further found that Apple's disclosures—such as footnotes and small print disclosures—were neither sufficiently clear and conspicuous nor close to the triggering claims.

While these features are now available, **NAD recommended Apple avoid conveying the message that features are available when they are not**."[10]

17.    Further, NAD reviewed claims regarding Apple's new artificial intelligence Siri functionality, which also appeared under the "Available Now" heading on Apple's website:

"During the inquiry, Apple informed NAD that these Siri features would not be available on the original timeline and that it had updated its promotional materials accordingly and modified claims and disclosures to adequately communicate their status.

Additionally, Apple also permanently discontinued the "More Personal Siri" video demonstration. Therefore, NAD did not review these claims and will treat them, for compliance purposes, as though **NAD recommended they be discontinued**."[11]

18.    Following NAD's inquiry, Apple removed the "available now" claim from the top of its Apple Intelligence webpage in late March.[12]

19.    Apple's Chief Executive Officer Tim Cook announced on a May 1, 2025 earnings call that Apple needs "more time" to upgrade Siri's AI features and capabilities.[13] When asked about

[10] *Id.*
[11] *Id.*
[12] Emma Roth, *Apple drops 'available now' from Apple Intelligence page*, THE VERGE (Apr 22, 2025), https://www.theverge.com/news/653413/apple-intelligence-available-now-advertising-claim.
[13] *Apple Needs 'Time' to Upgrade Siri; Services Revenue Dampened by Cost Hikes*, PYMNTS (May 1, 2025), https://www.pymnts.com/apple/2025/apple-needs-time-to-upgrade-siri-services-revenue-dampened-by-cost-

specific reasons for the delay, Cook stated "we are making progress", but "it's just taking a bit longer than we thought."[14] Apple has still not yet provided a timeline for when the advertised features will be released, other than claiming they will be available "in the coming year."[15]

20.    Plaintiff ultimately relied on Apple's false and misleading claims about the AI capabilities of the iPhone 16.  Plaintiff was exposed to Apple's deceptive and misleading advertising campaign that influenced his decision to purchase the Product.

21.    The Challenged Representations misled reasonable consumers into believing the Products possessed certain AI qualities, capabilities, and features, that they simply do not have. As a result, Apple charged consumers for Products they would not have purchased, or at least not at its premium price, had the advertising been honest. Beyond exploiting unsuspecting consumers, Apple also gained an unfair advantage over competitors in the market who do not tout non-existent AI features, or who actually deliver them as promised.

22.    Due to the risks and proliferation of false AI-related advertising in the consumer market, the California Attorney General's office issued a dedicated Legal Advisory to provide guidance to consumers and companies about their rights and obligations under California law.[16] Specifically, the advisory affirms that California's False Advertising Law "would prohibit false advertising regarding the capabilities, availability, and utility of AI products [.]"[17]

23.    Apple, founded and based in California, is intimately familiar with these consumer protection laws. But in the race for AI market share, it decided to violate them anyway, misleading consumers into believing that the Products possessed AI features, functions, and benefits the Products simply do not have and, according to company and industry insiders, may never have.

hikes/#:~:text=Apple%20CEO%20Tim%20Cook%20said%20Thursday%20(May%201)%20that%20the,other%20voice%2Denabled%20AI%20chatbots.
[14] *Id.*
[15] Chance Miller, *Tim Cook Addresses Apple's Delay of Personalized Siri features*, 9ᴛᴏ5Mᴀᴄ (May 1, 2025), https://9to5mac.com/2025/05/01/tim-cook-addresses-apples-delay-of-personalized-siri-features/.
[16] *California Attorney General's Legal Advisory on the Application of Existing California Laws to Artificial Intelligence*, Cᴀʟɪꜰᴏʀɴɪᴀ Dᴇᴘᴀʀᴛᴍᴇɴᴛ ᴏꜰ Jᴜꜱᴛɪᴄᴇ, https://oag.ca.gov/system/files/attachments/press-docs/Legal%20Advisory%20-%20Application%20of%20Existing%20CA%20Laws%20to%20Artificial%20Intelligence.pdf.
[17] *Id.*

CLASS ACTION COMPLAINT

Even if the promised features arrive years later, they will likely be available across competing technologies by then as well, rendering Apple's early campaign of supposedly unique and "innovative" capabilities meaningless. Based on its historical production cadence, it is also likely that Apple would be marketing another new iPhone series, leaving consumers who bought into Apple's false promises for the 16 series stuck with outdated technology for which they also overpaid. This is exactly the kind of calculated deception and market impact that California consumer protection laws were designed to prevent.

24.    Consumers are increasingly seeking sophisticated artificial intelligence software for their phones and electronic products. According to a recent survey, 60% of consumers now consider AI features important when choosing their next smartphone, including 21% who say AI features are very important.[18] AI-powered Voice Assistants, such as Siri, are considered most useful and sought after by consumers.[19]

25.    Defendant takes advantage of consumers' desire for cutting-edge artificial intelligence software and features on their phones, especially as Apple has been facing competition from other large smartphone manufacturers like Samsung and Google's Android.[20]

26.    Plaintiff brings this action individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (defined *infra*), for dual primary objectives. ***One***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class, a monetary recovery of the price premium Plaintiff and consumers have overpaid for the Products as a result of the Challenged Representations, as consistent with permissible law (including, for example, damages,[21] restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). ***Two***, Plaintiff seeks on

---

[18] Rishad Dsouza, *AI on smartphones – what features do consumers value most?* YOUGOV (Sept. 30, 2024) https://business.yougov.com/content/50614-ai-on-smartphones-what-features-do-consumers-value-most.
[19] *Id.*
[20] Daniel Howley, *Apple's AI Strategy Is Showing Troubling Cracks*, YAHOO FINANCE (Mar. 12, 2025) https://finance.yahoo.com/news/apples-ai-strategy-is-showing-troubling-cracks-150559429.html.
[21] Except as to the Consumer Legal Remedies Act ("CLRA") claim.

Plaintiff's individual behalf and on behalf of the Class and the public, injunctive relief to remedy the deceptive conduct. Injunctive relief is necessary to stop any current and future false advertising and otherwise remedy prior false advertising. Injunctive relief could require Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representations; disclosure of the Product's prior false advertising and removal or modification of the Challenged Representations, including a corrective advertising campaign to correct its prior false and misleading representations; modification of the Products so that they live up to the Challenged Representations; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

## II.    PARTIES

### *Plaintiff*

27.    **Plaintiff Ricardo Salas** is a citizen of California and has resided in Los Angeles County, California, at all times relevant to this Complaint. Plaintiff purchased the Apple iPhone 16 from Apple in November 2024, via his phone carrier, after relying on Apple's pervasive marketing campaign and believing that his new phone would contain the increased AI capabilities that Defendant repeatedly touted as part of its advertising.

28.    In deciding to make the purchase, Plaintiff viewed and relied on Apple's advertising and marketing, including the Challenged Representations, leading Plaintiff to believe that the iPhone 16, would have the capabilities advertised, including the new features as part of "Apple Intelligence." Plaintiff relied heavily on this when deciding to purchase the Product.

29.    At the time of purchase, Plaintiff did not know the Challenged Representations were false—i.e., that the iPhone would not be equipped with  capabilities and features advertised.

30.    Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' advertising and marketing that contradicted the prominent Challenged Representations or otherwise suggested that the iPhone would not have the advertised capabilities.

31.    Plaintiff would not have purchased the Products or would not have paid as much for the Products, had Defendant not made the false and misleading Challenged Representations and/or

had Plaintiff otherwise known that the Challenged Representations were not true—i.e., that the Products did not contain the capabilities that had been promised with Apple Intelligence.

32.   Plaintiff desires to purchase Defendant's products again if the Challenged Representations were true—i.e., if Defendant's products actually had the capabilities advertised including the Apple Intelligence and advanced Siri features.

33.   Plaintiff is not personally familiar with the technology behind the Products or their manufacturing and development, as Plaintiff does not possess any specialized knowledge, skill, experience, or education in artificial intelligence or smartphone software. Plaintiff in the future would therefore be unable to determine whether the Products' Challenged Representations are true—i.e., whether the capabilities of the Products are in fact as advertised.

34.   Plaintiff is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' advertising and marketing.

35.   Defendant continues to market and sell the Products and has not taken appropriate action to make clear the falsity or misleading nature of the Challenged Representations. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the products to perform as advertised and that its product features are accurately described.

### ***Defendant***

36.   **Apple, Inc.** is an active California corporation with its principal place of business located at One Apple Park Way, Cupertino, California 95014. Apple regularly conducts business throughout California, including in Los Angeles County.

37.   At all relevant times, Defendant was conducting business in the state of California, including the Class Period. Defendant is one of the owners, manufacturers, marketers, and distributors of the Products, and is the company that created, authorized, and controlled the use of the Challenged Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were

disseminated throughout California by Defendant and its agents to deceive and mislead consumers in the State of California into purchasing the Product.

### III.    JURISDICTION AND VENUE

38.    This Court has jurisdiction over this action under California Code of Civil Procedure § 410.10. This is an unlimited complex civil class action where the total damages incurred by Plaintiff and the Class in the aggregate exceeds the $35,000 jurisdictional minimum of this Court.

39.    This Court has jurisdiction over Defendant because it is located within Los Angeles County, California. Defendant is a California based entity that operates exclusively in California. Based on the proposed class definition, all of the affected class members are, or were, residents of California. Additionally, the alleged conduct giving rise to this action occurred entirely within California.

40.    Venue is proper in this Court under California Bus. & Prof. Code § 17203 and Code of Civil Procedure §§ 395(a) and 395.5 because Defendant is headquartered within this Court's jurisdiction and because a substantial part of the events giving rise to Plaintiff's claims occurred in this County.

### IV.    FACTUAL ALLEGATIONS

#### A.    Artificial Intelligence Smartphone Growth

41.    The global demand for artificial intelligence powered smartphones continues to grow, particularly among younger consumers.[22] It is estimated that AI smartphones will make up 54% of total smartphone shipments by 2028.[23] Further, Generative AI smartphones are projected to be the fastest-growing segment in the smartphone category, outperforming the non-AI smartphone

---

[22] *AI Smartphones to Make 54% of Total Smartphone Shipments by 2028, 3x More Than This Year*, EDGE AI + VISION ALLIANCE (Sept. 23, 2024),
https://www.edge-ai-vision.com/2024/09/ai-smartphones-to-make-54-of-total-smartphone-shipments-by-2028-3x-more-than-this-year/#:~:text=Search%20for%3A-,AI%20Smartphones%20to%20Make%2054%25%20of%20Total%20Smartphone%20Shipments%20by,3x%20More%20Than%20This%20Year&text=The%20global%20demand%20for%20AI,more%20than%20the%20average%20device.
[23] *Id.*

CLASS ACTION COMPLAINT

segment.[24] The global smartphone market is rapidly expanding, growing 7% in 2024 and reaching 1.22 billion units worldwide.[25]

42.    As the leading global smartphone manufacturer, Apple holds 23% of the global smartphone share and shipped roughly 226 million iPhones worldwide in 2024.[26] Of the units shipped, shipments of the falsely-advertised 16 Pro and Pro Max in 2024 were at least 11% higher than the 15 Pro and Pro Max in 2023, reaching over 55 million units.[27]

43.    Following the announcement of Apple Intelligence at the 2024 WWDC, Apple shares rose 7% to a record high. Analysts predicted that the new Apple Intelligence features could encourage a "cascade of new purchases" ahead of Apple's new products.[28]

**B. <u>Apple Struggles to Keep Up in the AI "Arms Race"</u>**

44.    Tech companies have raced to develop artificial intelligence technology to comply with growing consumer demand. Apple's competitors, Samsung and Google, use Google's Gemini AI platform and continue to add more AI functionality to their devices. Apple has struggled to keep up with AI developments and is "seemingly being lapped in the AI race."[29] Apple has drawn criticism and public embarrassment for its slow rollout of Apple Intelligence features.[30] Meanwhile,

---

[24] Francisco Jeronimo, *The Rise of Gen AI Smartphones*, IDC (July 5, 2024), https://blogs.idc.com/2024/07/05/the-rise-of-gen-ai-smartphones/#:~:text=Market%20Opportunity,78.4%25%20for%202023%2D2028.

[25] *Global smartphone market soared 7% in 2024 as vendors prepare for tricky 2025*, CANALYS (Feb. 3, 2025), https://canalys.com/newsroom/worldwide-smartphone-market-2024.

[26] *Global Smartphone Market Share: Quarterly*, COUNTERPOINT (Mar. 3, 2025), https://www.counterpointresearch.com/insight/global-smartphone-share/.

[27] *Id.*

[28] *Apple stock reaches record high after announcement of new AI* features, THE GUARDIAN (June 11, 2024), https://www.theguardian.com/technology/article/2024/jun/11/apple-stock-reaches-record-high.

[29] Mike Wuerthele and Wes Hilliard, *Everyone is a loser in the Apple Intelligence race*, APPLE INSIDER (Mar 11, 2025), https://appleinsider.com/articles/25/03/11/everyone-is-a-loser-in-the-apple-intelligence-race.

[30] *John Giannandrea out as Siri chief, Apple Vision Pro lead in*, APPLE INSIDER (Mar. 20, 2025), https://appleinsider.com/articles/25/03/20/john-giannandrea-out-as-siri-chief-apple-vision-pro-lead-in.

Apple's tech rivals such as Microsoft, Alphabet, Amazon, and Meta have pulled ahead in the AI field.[31]

45.    Apple announced Apple Intelligence at the WWDC in 2024, even though core features did not exist and before allowing ample time to properly integrate the promised AI technology into Apple's operating systems.[32] Apple's pervasive and purposely false marketing campaign centered on delivering supposedly new and unprecedented AI technology and capabilities with the iPhone 16 series hid the truth from consumers. As a result, millions were falsely enticed to buy the Products, only to find out that the promised features did not exist and have been delayed for months.

46.    Apple has yet to provide a clear timeline for when the artificial intelligence Siri features will be available. Some sources predict that the next-generation Siri as featured in Apple's deceptive advertising won't be ready until iOS 20 in 2027 at the earliest, 3 years after the Apple Intelligence announcement in 2024.[33]

47.    It is reported that Apple executives, including software engineer Craig Federighi, "voiced strong concerns internally that the features didn't work properly — or as advertised — in their personal testing."[34] Sources also reported that employees in Apple's AI division "believe that work on the features could be scrapped altogether" and that the features may have to be rebuilt "from scratch."[35] Following the Siri development delays, Apple restructured its AI team, including replacing AI lead John Giannandrea who was the executive in charge of Siri.[36]

---

[31] *Apple Intelligence has failed to boost iPhone sales*, MSN (Jan. 11, 2025), https://www.msn.com/en-us/technology/artificial-intelligence/apple-intelligence-has-failed-to-boost-iphone-sales-ming-chi-kuo/ar-BB1rhczl?ocid=BingNewsVerp.
[32] Stevie Bonifield, *Apple Intelligence just ran into more bad news — and Siri is the problem*, YAHOO! TECH (March 3, 2025), https://www.yahoo.com/tech/apple-intelligence-just-ran-more-202000273.html.
[33] Samantha Kelly, *Major Siri Redesign May Be Delayed Again, Report Says*, CNET (March 3, 2025)    https://www.cnet.com/tech/services-and-software/major-siri-redesign-may-be-delayed-again-report-says/.
[34] Jay Peters, *Apple Delays Upgraded Siri Intelligence Longer Than We Thought*, THE VERGE (March 7, 2025) https://www.theverge.com/news/626035/apple-delays-upgraded-siri-intelligence-longer-than-we.thought.
[35] *Id.*
[36] Malcolm Owen, *John Giannandrea out as Siri chief, Apple Vision Pro lead in*, Apple Insider (Mar. 20, 2025), https://appleinsider.com/articles/25/03/20/john-giannandrea-out-as-siri-chief-apple-vision-pro-lead-in.

CLASS ACTION COMPLAINT

48.    Apple was aware that it could not release the promised technology on schedule, yet continued to falsely advertise the Products through a deceptive marketing scheme, prioritizing profits over truth in its quest to regain ground in the race for AI market share.

**C.    Apple's Deceptive Advertising and Marketing of the Products**

49.    Not only has Defendant marketed and advertised the Products with the Challenged Representations, but Defendant has engaged in a marketing campaign initiated before and continuing throughout the Class Period (defined *infra*) that repeats and reinforces the Challenged Representations. Defendant's pervasive advertising included online and television advertising as well as numerous press releases, media statements, and product demonstration videos, touting non-existent features without making it clear to consumers that the Products would lack advertised capabilities.

50.    Notably, in September 2024 Defendant released a commercial for its new iPhone lineup that highlighted Siri's personalization features and upgraded experience on the iPhone 16 that was aired extensively on television as well as online.[37] However, the Products do not have the capabilities as depicted in the advertisement. Following Defendant's announcement of the delay of the next generation Siri on March 7, 2025, Defendant pulled this particular commercial from YouTube. Still, it has failed to retract all the similarly false representations in the market that began in the Summer of 2024, much less take any action that would adequately remedy the consumers harmed by the company's widespread deception.

**D.    Plaintiff and Reasonable Consumers Were Misled into Buying the Products to Their Detriment**

51.    The Challenged Representations lead reasonable consumers, like Plaintiff, into believing that the Products conform to the Challenged Representations—meaning, consumers are led to believe that the Products would contain the capabilities advertised and perform as claimed by Apple in prior presentations and marketing of the Products.

---

[37] Omar Sohail, *Apple Intelligence Ad Showing New Siri Has Been Removed*, WCCFTECH (March 8, 2025) https://wccftech.com/apple-intelligence-ad-showing-new-siri-has-been-removed/.

CLASS ACTION COMPLAINT

52. The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products—meaning that it is important to consumers that the iPhone 16 would contain the capabilities advertised as present in the Apple Intelligence features. Apple knew that claiming its new iPhone lineup would have these AI capabilities would be material to the public given how popular AI is generally and thus used a mirage of AI innovation, to drive sales of the iPhone 16 and to obtain an unfair competitive edge over other manufacturers actually providing advanced AI features (or not falsely promising that they do).

53. The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products.

54. The Challenged Representations are deceptive because the Products do not contain the technical capabilities that Apple advertised.

55. The Class who purchased the Products, including Plaintiff, did not know and had no reason to know, at the time of purchase, that the Products' Challenged Representations were false, misleading, deceptive, and unlawful.

56. Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside the Products' design/purpose to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

57. Defendant knew or should have known that its false claims regarding the capabilities of the Apple Intelligence functions would mean that those consumers would believe the iPhone 16 was capable of those functions, and would induce the consumers to purchase it.

58. Defendant advertised the Apple Intelligence functions for the iPhone 16 lineup knowing that it could not actually provide the capabilities that it was advertising.

59. Defendant knew or should have known of the Challenged Representations' materiality to consumers. Apple advertised Apple Intelligence as a way to enhance sales of its iPhones and other products, knowing that consumers highly prized artificial intelligence capabilities. Apple

made the false and misleading representations with the knowledge that the Apple Intelligence software nor the Products had the capabilities Apple claimed in order to artificially inflate demand, and the price, for the iPhone 16 series.

60.     Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations'—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the representations in deciding to buy the Products, Defendant deliberately chose to market, and continue marketing, the Products with the Challenged Representations thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations would mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted.

61.     Plaintiff and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attributes claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's Challenged Representations, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

62.     Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

63.     The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA.

64.     In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, over a long period of time, in order to gain an unfair

advantage over competitor products and to take advantage of consumers' desire for Products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations made on the type of products at issue). Thus, Plaintiff and Class Members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of Plaintiff (individuals who seek or acquire, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

65.     Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of a corrective advertising campaign and affirmative disclosures, is necessary to dispel the public misperception about the Products that has resulted from Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Product's true nature and an advertising campaign focused on correcting the prior false and misleading statements. An injunction requiring affirmative disclosures, as well as corrective advertising, to dispel the public's misperception and prevent the ongoing deception, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future sales of Products, and quantities of past/future sales of Products.

66.     Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

67.    Lastly, this is an initial pleading in this action, and discovery has not yet commenced. No class has been certified yet. No expert discovery has commenced. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves Plaintiff's right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ALLEGATIONS

68.    Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of the Class defined as follows:

**"All residents of California who, within four years prior to the filing of this action, purchased any Apple device advertised as having Apple Intelligence, including the Apple iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, and other Apple devices ("Class").**

This definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

69.    Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisi`ons; and (iv) any judicial officer presiding over this matter and person within the judicial officer's immediate family.

70.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

71.    Members of the Class are so numerous that joinder of all members is impracticable. The Class consists of, at minimum, tens of thousands of purchasers, dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

72.    There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a)    Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b)    Whether Defendant's conduct of advertising and selling the Products was false or deceptive;

c)    Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

d)    Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

e)    Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

f)    Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

g)    Whether Defendant's advertising and marketing of the Products are misleading in violation of Business and Professions Code section 17500, *et seq.*;

h)    Whether Defendant knew or by the exercise of reasonable care should have known its advertising and marketing were and are misleading in violation of Business and Professions Code section 17500, *et seq.*;

i)    Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

19

j) Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k) Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

l) Whether Plaintiff and the Class paid more money for the Products than they actually received;

m) How much more money Plaintiff and the Class paid for the Products than they actually received;

n) Whether Plaintiff and the Class are entitled to injunctive relief; and

o) Whether Defendant was unjustly enriched by its unlawful conduct.

73.    The common questions of law and fact predominate over questions that affect only individual Class Members.

74.    Plaintiff's claims are typical of the claims of the Class Members Plaintiff seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

75.    Plaintiff is an adequate representative of the Class he seeks to represent because Plaintiff's interests do not conflict with the interests of the Class Members. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

76.    Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories. All iPhones have to be

20

registered when activated, during which time, Apple collects the information about the user including their email addresses and more – and thus maintains information regarding its purchasers.

77.    A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a)  The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b)  Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c)  Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d)  When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e)  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

78.    Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

CLASS ACTION COMPLAINT

79.    The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

80.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT ONE

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (On Behalf of the Class)

81.    Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

82.    This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and the Class who purchased the Products within the applicable statute of limitations.

83.    California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

84.    Defendant, in its pervasive advertising and marketing of the Products, made misleading statements regarding the quality and characteristics of the Products—specifically, the Challenged Representations regarding the capabilities of Apple Intelligence. Instead, the Products lacked the advertised functionality of Apple Intelligence, failing to perform tasks and provide features as represented in Defendant's marketing materials. Furthermore, contrary to Defendant's claims of advanced AI capabilities, the Products offered a significantly limited or entirely absent version of Apple Intelligence, misleading consumers about its actual utility and performance. Worse yet, Defendant promoted its Products based on these overstated AI capabilities, leading consumers to believe they were purchasing a device with features that did not exist or were materially misrepresented. Such claims were made by Defendant in marketing its product.

85.    Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising because the Products lack the advertised capabilities of Apple Intelligence. Thus, the claims regarding the advanced AI features are not capable of performing as advertised, and the Products fail to deliver the advertised functionality for everyday use and during various activities, as directed and intended by Defendant. Further, the Products are promoted for their sophisticated AI, leading consumers to expect a level of intelligence that is not actually present. Defendant knew (and knows) that the Products do not possess the advertised Apple Intelligence capabilities, posing a misrepresentation of their functionality, and yet Defendant intentionally advertised and marketed the Products to deceive reasonable consumers and continues to do so presently.

86.    Defendant's advertising and marketing of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products possess the advanced AI capabilities Apple advertised, and, thus, are equipped with the specific capabilities advertised.

87.    Plaintiff and the Class have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations—namely Plaintiff and the Class lost a significant portion of the purchase price for the Products they bought from the Defendant.

88.    Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

89.    Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

23

CLASS ACTION COMPLAINT

90.     All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

91.     Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the Class seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and marketing of the Products. Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

92.     As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

93.     Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that

reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. This misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### A. "Unfair" Prong

94.     Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

95.     Defendant's action of falsely advertising the Products with the Challenged Representations encouraged consumers to purchase the Products with the expectation that the Apple Intelligence features would be as capable as advertised. However, the Apple Intelligence features do not perform as advertised, causing financial injuries to consumers, who do not receive Products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive advertising and marketing of the Products. Accordingly, the injuries caused by Defendant's deceptive advertising and marketing outweigh any benefits.

96.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

97.     Here, Defendant's conduct of advertising the Products as having artificial intelligence capabilities they do not actually have results in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

CLASS ACTION COMPLAINT

98.   Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

99.   Defendant's advertising and marketing of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

100.   There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

101.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

102.   Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of advertising and marketing the Products with the Challenged Representations.

103.   Plaintiff and the Class have suffered injury in fact, have lost money and purchased an inferior product as a result of Defendant's unfair conduct. Plaintiff and the Class paid an unwarranted premium for these Products. Specifically, Plaintiff and the Class paid for Products which were advertised as having advanced artificial intelligence capabilities that were at least as good as, if not better, than the products of other competitors in the market.

104.   Plaintiff and the Class would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and marketing were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**B. "Fraudulent" Prong**

105.   The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

106.    Defendant used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff and the Class. The Challenged Representations are deceptive, and Defendant knew, or should have known, of its deception. The Challenged Representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

107.    As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

108.    Plaintiff and the Class reasonably and detrimentally relied on the material and deceptive Challenged Representations to their detriment in that they purchased the Products.

109.    Defendant has reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

110.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

111.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising and marketing the Products with the Challenged Representations.

112.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Specifically, Plaintiff and the Class paid for Products that were advertised as having advanced artificial intelligence capabilities that were at least as good as, if not better, than the products of other competitors in the market. Instead, the software included did not come close to what was advertised, and was well below the capabilities of other competing products. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### C.  "Unlawful" Prong

113.    The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

114.   Defendant's advertising and marketing of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "CLRA") and California Business and Professions Code sections 17500, *et seq.* (the "FAL") as set forth below in the sections regarding those causes of action.

115.   Additionally, Defendant's use of the Challenged Misrepresentations to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

116.   Defendant's conduct in making the deceptive representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law claims stated in this lawsuit.

117.   Defendant's advertising and marketing of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

118.   Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising the Products with the Challenged Representations.

119.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

120.   Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of deceptive advertising of the Products.

121.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the Class paid an unwarranted premium for the

Products. Plaintiff and the Class would not have purchased the Products if they had known that the Products were not equipped with the capabilities being advertised. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, _et seq._)**

**(On Behalf of the Class)**

122.   Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

123.   Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

124.   The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, _et seq._, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

125.   Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading Challenged Representations disseminated to the public through the Products' advertising and marketing. These representations were deceptive because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

126.   In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

127.   Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the Class, to purchase the Products.

128.   As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

29

Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result, as well as a corrective advertising campaign to correct prior misrepresentations.

129.    Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for a Product that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff.

130.    Defendant's misconduct is oppressive and subjected Plaintiff and consumers to unjust hardship, and knowingly disregarded their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**COUNT THREE**

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq.*)**

**(On Behalf of the Class)**

131.    Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

132.    Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

133.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

134. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a) because they are tangible objects that Plaintiff and the Class purchased primarily for personal, family, or household purposes.

135. Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c) because it is a corporation.

136. Plaintiff and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d) because they are individuals who purchased the Products for personal, family, or household purposes.

137. The purchase of the Products by Plaintiff and members of the Class are "transactions" as defined by the CLRA under California Civil Code section 1761(e) because Plaintiff entered into an agreement with Defendant or its authorized vendors to purchase the Products.

138. Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the Class through the misleading, deceptive, and fraudulent Challenged Representations:

    a) Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which they do not have."

    b) Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . when they are of another."

    c) Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [] as advertised."

139. Defendant's uniform and material representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Challenged Representations were misleading.

140. Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

141. Plaintiff and members of the Class could not have reasonably avoided such injury. Plaintiff and members of the Class were unaware of the existence of the facts that Defendant

1    suppressed and failed to disclose, and Plaintiff and members of the Class would not have purchased

2    the Products and/or would have purchased them on different terms had they known the truth.

3          142.   Plaintiff and the Class suffered harm as a result of Defendant's violations of the CLRA

4    because they relied on the Challenged Representations in deciding to purchase the Products. The

5    Challenged Representations were a substantial factor. The Challenged Representations were

6    material because a reasonable consumer would consider it important in deciding whether to

7    purchase the Products.

8          143.   As a direct and proximate result of Defendant's misconduct in violation of the CLRA,

9    Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for

10   the Products. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of

11   restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said

12   monies.

13         144.   Pursuant to Section 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of

14   an order enjoining the above-described wrongful acts and practices of Defendant, including, but not

15   limited to, an order enjoining Defendant from continuing to make the misleading claims challenged

16   herein and requiring Defendant to undertake a corrective advertising campaign to correct its prior

17   false and misleading representations. Plaintiff also requests a court order requiring Defendant to

18   provide restitution to Plaintiff and the Class for the money wrongfully acquired. Unless this

19   injunctive relief is granted, Plaintiff will suffer irreparable harm.

20         145.   Plaintiff respectfully requests that the Court enjoin Defendant from continuing to

21   employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In

22   addition, Defendant should be compelled to provide restitution to consumers who paid for Products

23   that are not what they expected to receive due to Defendant's misrepresentations.

24         146.   Plaintiff and members of the Class are entitled to equitable relief as no adequate

25   remedy at law exists.

26         147.   Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because

27   Defendant has failed to make clear that the Products do not contain Apple Intelligence capabilities

28   as originally advertised. Injunctive relief is necessary to correct past harm and prevent future harm—

CLASS ACTION COMPLAINT

none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of advertising or marketing modifications as well as a corrective advertising campaign, is necessary to dispel public misperception about the Products that has resulted from Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include providing Apple Intelligence capabilities as advertised or making clear to consumers that the Products were not capable of the abilities advertised. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the Products), rendering injunctive relief a necessary remedy.

### COUNT FOUR

### Fraud

### (On Behalf of the Class)

148.    Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

149.    Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

150.    Defendant affirmatively misrepresented the capabilities of the Products when selling and marketing them.

151.    Defendant also knew that its misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

152.    Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Products.

153.    Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

154.   Plaintiff and Class Members had a right to rely upon Defendant's representations as Defendant maintained monopolistic control over knowledge of the true quality of the Products.

155.   Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's misrepresentations, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

**COUNT FIVE**

**Negligent Misrepresentation**

**(On Behalf of the Class)**

156.    Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

157.   Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

158.   Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Products.

159.   Defendant breached its duty to Plaintiff and the Class by advertising the products as having capabilities they do not actually have.

160.   Defendant knew or should have known that the qualities and characteristics of the Products were not as advertised, marketed, detailed, or otherwise represented or suitable for their intended use and were otherwise not as warranted and represented by Defendant.

161.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Products had they known that the Products do not conform to the Product's marketing, advertising, or statements.

162.   Plaintiff and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available.

///

///

///

34

**COUNT SIX**

**Breach of Contract**

**(On Behalf of the Class)**

163.   Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

164.   Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

165.   Defendant expressly warranted that the Products would perform as advertised. Defendant's claims regarding the Products constituted an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff and the Class Members placed importance on Defendant's claims.

166.   All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class Members.

167.   Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class Members by not providing Products that conform to the advertising and marketing claims.

168.   As a result of Defendant's breach of contract, Plaintiff and the Class Members have been damaged in the amount to be determined at trial.

**COUNT SEVEN**

**Breach Of Implied Warranty of Merchantability**

**(On Behalf of the Class)**

169.   Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

170.   Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

171.   Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

35

172.   Defendant is a merchant with respect to the Products at issue.

173.   In order to be merchantable, goods must conform to the promises or affirmations of fact made in the advertising of the product.

174.   Defendant breached the implied warranty of merchantability to Plaintiff and the Class in its representations that the Products contained the Apple Intelligence capabilities advertised when that was actually false.

175.   As a result of Defendant's misleading conduct, Plaintiff and the Class did not receive merchantable goods as impliedly warranted by Defendant.

176.   Defendant did not exclude or modify the Product's implied warranty of merchantability.

177.   As a proximate result of Defendant's breach of its implied warranty, Plaintiff and the Class incurred damages. Plaintiff and the Class were damaged as a result of Defendant's failure to comply with its obligations under the implied warranty, since Plaintiff and the Class paid for a Product that did not have the promised quality and nature, paid a premium for the Product when they could have instead purchased other less expensive smartphones or other products, and lost the opportunity to purchase similar products that provided the capabilities advertised.

178.   As a result of Defendant's breach of contract, Plaintiff and the Class Members have been damaged in the amount to be determined at trial.

### COUNT EIGHT

### Quasi-Contract / Unjust Enrichment

### (On Behalf of the Class)

179.   Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

180.   Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

181.   To the extent required by law, this cause of action is alleged in the alternative.

182.   Plaintiff and Class members conferred monetary benefits on Defendant by purchasing the Products. Defendant's profits are funded entirely from their generated revenues – payments

made by or on behalf of Plaintiff and Class Members. As such, a portion of these payments was attributable to Defendant's Challenged Representations.

183.   Defendant knew that Plaintiff and the Class conferred a benefit which Defendant accepted, and through which, Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that contrary to its representations, the Products did not have the technical capabilities they had advertised, these misleading representations caused injuries to Plaintiff and Class members because they would not have purchased the Product if the true facts were known.

184.   Defendant enriched itself by saving the costs they reasonably should have spent on ensuring that the Products had the technical capabilities advertised, and conform with their advertised representations.

185.   Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

a.   For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b.   For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c.   For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative

advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d.  For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class requested herein, consistent with applicable law and pursuant to only those causes of action so permitted;

e.  For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f.  For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g.  For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h.  For such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff respectfully demands a trial by jury for all claims.

DATED: May 29, 2025

**MALK & POGO LAW GROUP, LLP**

Valter Malkhasyan, Esq.
Erik Pogosyan, Esq.

*Counsel for Plaintiff and the Proposed Class*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Valter Malkhasyan (348491) | Erik Pogosyan (345650)
Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave Suite 204, Glendale, CA 91205

TELEPHONE NO.: (818) 484-5204          FAX NO.: (818) 824-5144
EMAIL ADDRESS: valter@malkpogolaw.com | erik@malkpogolaw.com
ATTORNEY FOR *(Name):* Plaintiff Ricardo Salas and Proposed Class

*FOR COURT USE ONLY*

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/29/2025 4:38 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Gnade, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Salas v. Apple, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000) / [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 25STCV15685 |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 8; UCL, FAL, CLRA, Fraud, Misrepresentation, Breach of Contract, Breach of Warranty, and Unjust Enrichment
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: May 29, 2025
Valter Malkhasyan
_____
(TYPE OR PRINT NAME)          ►          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice— Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ—Administrative Mandamus
  Writ—Mandamus on Limited Court Case Matter
  Writ—Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal—Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE<br>Salas v. Apple Inc. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.   Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.   Location where petitioner resides. |
| 2.   Permissive filing in Central District. | 8.   Location wherein defendant/respondent functions wholly. |
| 3.   Location where cause of action arose. | 9.   Location where one or more of the parties reside. |
| 4.   Location where bodily injury, death or damage occurred. | 10.   Location of Labor Commissioner Office. |
| 5.   Location where performance required, or defendant resides. | 11.   Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.   Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Salas v. Apple Inc. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☑ 1601 Fraud (no contract) | ①, 2 ③ |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| | | |
|---|---|---|
| LASC CIV 109 Rev. 01/23 | CIVIL CASE COVER SHEET ADDENDUM | LASC Local Rule 2.3 |
| For Mandatory Use | AND STATEMENT OF LOCATION | |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Salas v. Apple Inc. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract**<br>(Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Salas v. Apple Inc. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE<br>Salas v. Apple Inc. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☑ 1. ☐ 2. ☑ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS:<br>4518 3/4 S Normandie Ave |
|---|---|
| CITY:<br>Los Angeles, | STATE:<br>CA | ZIP CODE:<br>90037 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: _05/29/2025_ _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>APPLE, INC.<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>RICARDO SALAS, individually and on behalf of all other similarly situated | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>5/30/2025 10:18 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By S. Trinh, Deputy Clerk** |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

  You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

  *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

  *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse<br><br>111 N. Hill St., Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br>25STCV15685 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Valter Malkhasyan | Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204, Glendale, CA 91205 | (818) 351-6611

DATE: 05/30/2025                                                                 Clerk, by _____ , Deputy
*(Fecha)* David W. Slayton, Executive Officer/Clerk of Court  *(Secretario)*          S. Trinh          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Apple, Inc.

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |



*Superior Court of California, County of Los Angeles*
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

**TYPES OF ADR**

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

**ADVANTAGES OF ADR**

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

**DISADVANTAGES OF ADR**

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

**WEBSITE RESOURCES FOR ADR**

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at* www.lacourt.org/ADR/programs.html.
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at* www.lacourt.org/ADR *or email* ADRCivil@lacourt.org.

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at* ADRCivil@lacourt.org.

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit* https://resolvelawla.com.

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Online Dispute Resolution (ODR).** Online Dispute Resolution (ODR) is a free online service provided by the Court to help small claims and unlawful detainer litigants explore settlement options before the hearing date without having to come to court. ODR guides parties through a step-by-step program. After both sides register for ODR, they may request assistance from trained mediators to help them reach a customized agreement. The program creates settlement agreements in the proper form and sends them to the Court for processing. Parties in small claims and unlawful detainer cases must carefully review the notices and other information they receive about ODR requirements that may apply to their case. *For more information, visit https://my.lacourt.org/odr.*

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>05/29/2025<br><br>David W. Slayton, Executive Officer / Clerk of Court<br><br>By: _____ J. Gnade _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>25STCV15685 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Elaine  Lu | 9 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 05/30/2025
   (Date)

David W. Slayton, Executive Officer / Clerk of Court

By J. Gnade_____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**